UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT E. LEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:18 CV 1231 ACL |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Plaintiff Robert E. Lee brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Disability Insurance Benefits under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Lee's severe impairment, he was not disabled as he had the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

---

[1]After this case was filed, a new Commissioner of Social Security was confirmed. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Deputy Commissioner Nancy A. Berryhill as the defendant in this suit.

# I.  Procedural History

Lee filed his application for benefits on April 29, 2015, claiming that he became unable to work on November 11, 2014.   (Tr. 203-04.)   In his Disability Report, Lee alleged disability due to residuals from a broken back, back pain, tail bone pain, shoulder pain, pain from back to knee, comprehension difficulties, and dizziness.   (Tr. 235.)   Lee was 54 years of age at his alleged onset of disability.   (Tr. 32.)   His application was denied initially.   (Tr. 148-52.)   Lee's claim was denied by an ALJ on October 3, 2017.   (Tr. 14-33.)   On May 31, 2018, the Appeals Council denied Lee's claim for review.   (Tr. 1-3.)   Thus, the decision of the ALJ stands as the final decision of the Commissioner.   *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Lee raises the following claims: (1) "The RFC is not based upon substantial evidence," (2) "The ALJ improperly considered opinion evidence," (3) "The ALJ erred in finding claimant's condition worsened more than a year after his initial injury;" and (4) "The credibility evaluation was erroneous."   (Doc. 19 at pp. 2, 4, 8-9, 13.)

## II.  The ALJ's Determination

The ALJ first found that Lee last met the insured status requirements of the Act on December 31, 2014.   (Tr. 19.)   She next found that Lee did not engage in substantial gainful activity during the period from his alleged onset date of November 11, 2014, through his date last insured of December 31, 2014.   *Id.*   In addition, the ALJ concluded that Lee had the following severe impairment: degenerative disc disease, status post T10-L2 instrumentation and stabilization of T12 compression fracture.   *Id.*   The ALJ found that Lee did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.   (Tr. 21.)

As to Lee's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c), with the following additional limitations: he could lift, carry, push, or pull 50 pounds occasionally and 25 pounds frequently; could sit for six hours in an eight-hour workday and stand or walk for six hours in an eight-hour workday; could never climb ladders, ropes, or scaffolds; and could have no exposure to unprotected heights or hazardous machinery.

*Id.*

The ALJ found that Lee was unable to perform any past relevant work, but was capable of performing other jobs existing in significant numbers in the national economy, such as dining room attendant, hand packager, and lab equipment cleaner. (Tr. 31, 33.) The ALJ therefore concluded that Lee was not under a disability, as defined in the Social Security Act, at any time from November 11, 2014, the alleged onset date, through December 31, 2014, the date last insured. (Tr. 33.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on April 29, 2015, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act through December 31, 2014, the last date insured.

*Id.*

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389,

401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1.  The credibility findings made by the ALJ.

2.  The plaintiff's vocational factors.

3.  The medical evidence from treating and consulting physicians.

4.  The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.  Any corroboration by third parties of the plaintiff's impairments.

6.  The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.*, 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050

(8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

## III.B. Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to

determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner

will find that the claimant is disabled.   20 C.F.R. § 416.920(a)(4)(v).   At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.   *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a.   The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists.   *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).   If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent."   20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2).   The Commissioner must then rate the degree of functional loss resulting from the impairments.   *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3).   Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities.   *See id.*   Next, the Commissioner must determine the severity of the impairment based on those ratings.   *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c).   If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder.   *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2).   This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders.   *See id.*   If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment.   *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

**IV. Discussion**

As an initial matter, the Court notes that Lee's insured status is relevant in this case. Lee alleged an onset of disability date of November 11, 2014. Lee sustained an injury to his back in a workplace accident on November 10, 2014. Lee's insured status expired on December 31, 2014. To be entitled to benefits under Title II, Lee must demonstrate he was disabled prior to December 31, 2014. *See* 20 C.F.R. § 404.130. Thus, the period under consideration in this case is from November 11, 2014, through December 31, 2014.

Lee must demonstrate not only the impairment, but the inability to work caused by the impairment lasted or was expected to last, not less than twelve months. *Barnhart v. Walton*, 535 U.S. 212, 217-18 (2002). Additionally, the impairment suffered must be "of such severity that [the claimant] is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether...a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

With these principles in mind, the undersigned will discuss Lee's claims in turn, beginning with the ALJ's evaluation of the medical opinion evidence.

**1. Opinion Evidence**

Lee argues that the ALJ improperly considered the medical opinion evidence in determining Lee's RFC.

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)). The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in [the] record." *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000).

The record, though, should be "evaluated as a whole." *Id.* at 1013 (quoting *Bentley v. Shalala*,

52 F.3d 784, 785-86 (8th Cir. 1997)). The ALJ is not required to rely on one doctor's opinion

entirely or choose between the opinions. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011).

Additionally, when a physician's records provide no elaboration and are "conclusory checkbox"

forms, the opinion can be of little evidentiary value. *See Anderson v. Astrue*, 696 F.3d 790, 794

(8th Cir. 2012). Regardless of the decision the ALJ must still provide "good reasons" for the

weight assigned the treating physician's opinion. 20 C.F.R § 404.1527(d)(2).

   The ALJ must weigh each opinion by considering the following factors: the examining

and treatment relationship between the claimant and the medical source, the length of the

treatment relationship and the frequency of examination, the nature and extent of the treatment

relationship, whether the physician provides support for his findings, whether other evidence in

the record is consistent with the physician's findings, and the physician's area of specialty. 20

C.F.R. §§ 404.1527(c)(1)-(5), 416 .927(c)(1)-(5).

   Lee first contends that the ALJ's "reliance on the FCE completed by the physical

therapist constitutes reversible error." (Doc. 19 at p. 4.)

   Jason Hinson, M.S., OTR/L, and Chris Turner, PT, CSCS performed a Functional

Capacity Evaluation ("FCE") on August 13, 2015. (Tr. 583-607.) These therapists evaluated

Lee to determine his maximum functional abilities following his November 10, 2014 work

injury. *Id.* Lee reported that he was injured when he fell approximately 25 feet from a ladder

and landed on an awning while working as a roofer. (Tr. 585.) He underwent back surgery for

a thoracic fracture the next day and started physical therapy the next month. *Id.* Lee reported

that he began experiencing right shoulder pain in January 2015 as his pain medications were decreased. *Id.* He then began therapy five times a week (three times per week for his back and two times per week for his shoulder). *Id.*

Mr. Hinson stated that he observed Lee's slow pace through the course of testing with increased labored movement patterns and transitional movements as the testing progressed. *Id.* He believed Lee provided an overall acceptable effort during testing that was self-limited with regards to pace of activities, and he declined frequent load handling secondary to increased symptoms. *Id.* Based on Lee's observed performance during testing, Mr. Hinson found that he handled loads occasionally within the medium physical demand level, although complete frequent lifting data was not obtained secondary to Lee's reported increase in symptoms. *Id.* Lee did not perform within the demands for his past roofer positions, and commented that he did not feel he could perform this position. *Id.* Mr. Hinson noted that Lee was "overall deconditioned." *Id.*

The ALJ indicated that she was assigning "great weight" to the opinion of Mr. Hinson and Mr. Turner that Lee was capable of performing work within the medium exertional level. (Tr. 25.) She acknowledged that the therapists were not acceptable medical sources capable of rendering medical opinions. *Id.* The ALJ stated that the opinion was nevertheless based upon a very thorough examination of Lee, including testing of his abilities to stand, walk, lift, carry, push, pull, and perform postural activities, and was consistent with the findings on examination and the accompanying narrative report. *Id.* She noted that the opinion was also consistent with the treatment notes of record documenting repeated findings of normal gait and station, no spinal tenderness or muscle spasms, normal bilateral lower extremity strength and sensation, negative straight-leg raise testing, and fair active lumbar range of motion. *Id.* Finally, the ALJ stated

that the opinion was consistent with Lee's course of treatment, which shows he largely discontinued prescription medication by early February of 2015, discontinued use of his brace in March of 2015, and continued to progress in physical therapy.   *Id.*

Social Security separates information sources into two main groups: *acceptable medical sources* and *other sources.*   It then divides *other sources* into two groups: *medical sources* and *non-medical sources.*   *Acceptable medical sources* include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists.   According to Social Security regulations, there are three major distinctions between acceptable medical sources and the others: (1) Only acceptable medical sources can provide evidence to establish the existence of a medically determinable impairment, (2) only acceptable medical sources can provide medical opinions, and (3) only acceptable medical sources can be considered treating sources, *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (emphasis in original) (internal citations omitted).   Medical sources include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists."   20 C.F.R. § 404.1513(d).[2]   "Information from these other sources cannot establish the existence of a medically determinable impairment.   Instead, there must be evidence from an "acceptable medical source" for this purpose."   SSR 06-03P, 2006 WL 2329939.   Further, these other sources are not entitled to controlling weight.   *LaCroix v. Barnhart*, 465 F.3d 881, 885-86 (8th Cir. 2006).

---

[2]Many Social Security regulations were amended effective March 27, 2017.   Per 20 C.F.R. §§ 404.614, 404.1527, 416.325, 416.927, the Court will use the regulations in effect at the time that this claim was filed on April 29, 2015.

The undersigned finds that the ALJ properly evaluated the opinion of Mr. Hinson and Mr. Turner. Because physical and occupational therapists are not "acceptable medical sources" under the relevant Social Security regulations, their opinions are not entitled to controlling weight and cannot be used to establish the presence of a medically determinable impairment. *Michel v. Colvin*, 640 Fed.Appx. 585, 594-95 (8th Cir. 2016); *see* 20 C.F.R. § 404.1513(a) & (d) (2015). In weighing such opinions—defined as "other medical evidence"—an ALJ "has more discretion and is permitted to consider any inconsistencies found within the record." *Nowling v. Colvin*, 813 F.3d 1110, 1123 (8th Cir. 2016). An ALJ, however, is *required* to consider these opinions, and she must evaluate them in light of several factors, including the nature and extent of the relationship between the source and the claimant, the examinations and testing performed by the source, the source's explanation and supporting evidence presented for the opinion, the opinion's consistency with other evidence, and whether the source has a specialty or area of expertise related to the impairment. *Id.* at 1123-24.

In this case, Mr. Hinson and Mr. Turner evaluated Lee for a total of four hours and thirty minutes over the course of one day. (Tr. 586.) They performed testing of Lee's abilities to stand, walk, lift, carry, push, pull, and perform postural activities, and provided detailed findings regarding this testing. For example, they noted Lee was able to lift 50 pounds occasionally and 25 pounds frequently from the floor to his waist; lift 40 pounds occasionally from his waist to his shoulder; lift 40 pounds occasionally from the floor to his shoulder; and lift 35 pounds occasionally from his waist to overhead. (Tr. 583.) The FCE contained the most detailed information in the record regarding Lee's functional abilities. Significantly, the August 2015 FCE occurred closest in time to the relevant period, only eight months after the expiration of Lee's insured status. Further, the ALJ found that the FCE findings were consistent with

findings on examination of Lee's various physicians. Thus, the ALJ considered the appropriate factors when evaluating this opinion and provided sufficient reasons for according weight to the opinion.

Lee next argues that the ALJ erred in giving "little weight" to the opinions of David Volarich, D.O. Dr. Volarich examined Lee on February 16, 2016, for the purpose of an independent medical examination ("IME") related to his workers' compensation claim. (Tr. 777.) Dr. Volarich expressed the opinion that Lee had a 50 percent permanent partial disability to the body as a whole, rated at the lumbar spine, due to his workplace injury. (Tr. 784.) He found that Lee was "unable to get back to work in the open labor market," and was "permanently and totally disabled as a direct result of the work related injury of 11/10/14 standing alone." *Id.* Dr. Volarich noted that Lee was advanced age, has a limited education and no GED, has worked labor jobs his entire work career, and was "unable to get back to work since 11/10/14." *Id.*

The ALJ indicated that she was assigning little weight to Dr. Volarich's opinions set out above because it was not consistent with the overall medical evidence of record, particularly during the period at issue. (Tr. 26.) Specifically, the ALJ stated that Lee's treating physician repeatedly observed him to exhibit normal gait and station, no spinal tenderness, normal bilateral lower extremity strength and sensation, and negative straight-leg raise testing bilaterally at appointments between April 6, 2015, and August 19, 2015. (Tr. 26-27, 545-58, 615-19.) The ALJ also cited Lee's physical therapy treatment notes, his performance on the FCE, and his disuse of pain medications as inconsistent with Dr. Volarich's opinions. (Tr. 27.) The ALJ noted that the issue of whether an individual is disabled is an ultimate question reserved to the Commissioner, and that permanent partial disability percentages assessed under the workers' compensation law do not correlate to any specific functional limitations. *Id.* She further stated

that Dr. Volarich did not set forth any particular limitations, which renders the opinion less probative in determining Lee's RFC. *Id.* Finally, the ALJ pointed out that Dr. Volarich's opinion considers factors other than Lee's impairments, namely his age, education, and work experience, which is not appropriate in determining RFC. *Id.*

Lee contends that Dr. Volarich provided an addendum to his report, and included limitations, which renders the ALJ's reasoning for discounting the opinion invalid. He argues that the ALJ should be allowed to reevaluate Dr. Volarich's opinion considering the addendum.

Dr. Volarich authored an "Addendum to IME of February 16, 2016" ("Addendum") on May 26, 2017. (Tr. 82-87.) In the Addendum, Dr. Volarich indicated that he had "reexamined and reevaluated" Lee regarding his November 2014 work-related injuries. (Tr. 82.) Dr. Volarich concluded that Lee had reached maximum medical improvement from a surgical standpoint, but would require pain management indefinitely to control his symptoms. (Tr. 85.) He found that Lee had 50 percent permanent partial disability of the body at the thoracolumbar spine due to his T12 compression fracture that required surgical fusion, and recommended Lee undergo vocational assessment to determine if he could return to work. *Id.* Dr. Volarich further expressed the opinion that Lee had the following work-related restrictions: should avoid all bending, twisting, lifting, pushing, pulling, carrying, climbing, and other similar tasks as needed; should not handle weights greater than 15 pounds, and limit this to occasionally; should not handle weight over his head or away from his body, nor should he carry weight over long distances or uneven terrain; should avoid remaining in a fixed position for any more than 30 minutes at a time; and should change positions frequently to maximize comfort and rest when needed. (Tr. 86.)

Lee argues that, considering this "new evidence that sets forth limitations," Dr. Volarich's opinion is more persuasive.   (Doc. 19 at p. 8.)   He contends that this new evidence is "material and relates back to the 2/16/16 IME report…"   *Id.*   The undersigned disagrees.   The Addendum was dated May 26, 2017, and was based on Dr. Volarich's second examination and review of new medical evidence.   As such, it was not probative as to Lee's condition during the relevant period, which was more than two years prior to Dr. Volarich's Addendum.   Indeed, the Appeals Council considered the Addendum and found that it did "not relate to the period at issue.   Therefore, it does not affect the decision about whether [Lee was] disabled beginning on or before December 31, 2014."   (Tr. 2.)   Further, the Addendum did not cure the other deficiencies of Dr. Volarich's opinion set out by the ALJ.   For example, Dr. Volarich's opinion remains inconsistent with

the other medical evidence of record during the period at issue; permanent partial disability percentages assessed under the workers' compensation law do not correlate to functional limitations; and the opinion considers vocational factors not relevant to the RFC determination. Thus, the Addendum has no effect on the ALJ's consideration of Dr. Volarich's opinion.   The ALJ did not err in assigning little weigh to Dr. Volarich's February 2016 opinions.

### 2.      Worsening of Lee's Condition

Lee argues that the ALJ erred in finding Lee's condition improved to the point he was capable of performing medium work within twelve months of his initial injury and experienced a worsening of his condition significantly after his date last insured.   He contends that there was no evidence to suggest there was a significant worsening of his lumbar spine impairment.

The following findings of the ALJ are at issue:

> The overall evidence indicates that the claimant initially had a good recovery from his initial spinal injury.   While the medical evidence indicates a subsequent worsening of the claimant's spine impairment in 2016, such worsening occurred

after the date last insured.   This evidence supports the determinization that the claimant retained the residual functional capacity to perform medium exertional work, with the additional postural and environmental limitations set forth above, through the date last insured (when the claimant's recovery period of 12 months is considered).

(Tr. 25.)

In support of her finding that Lee initially experienced a good recovery from his surgery, the ALJ cited the following evidence:

- X-rays of the thoracic and lumbar spine Lee underwent in December 2014 showed a T2 fracture managed by the fusion and unchanged mild degenerative disc disease from the L3 to S1 levels.   (Tr. 22, 723-24.)
- On his December 17, 2014 follow up with neurosurgeon Wilson Ray, M.D., Lee was walking with the assistance of a cane and had good strength in the bilateral upper and lower extremities; Dr. Ray advised him he could discontinue use of the thoracolumbosacral orthosis ("TLSO") brace and could start physical therapy.   (Tr. 22, 682.)
- Lee started physical therapy on December 19, 2014, and by January 23, 2015, was reporting only intermittent back pain and spasm and hip pain, and had improved his lumbar range of motion in almost all planes.   (Tr. 23,444-45.)
- In early February of 2015, Lee reported that he was no longer taking pain medication.   (Tr. 23, 452-54.)
- Lee demonstrated improved gait pattern and range of motion at his March 9, 2015 physical therapy appointment.   (Tr. 23, 463.)
- At his March 19, 2016 follow-up with Dr. Ray, Lee reported that his pain continued to get better; Dr. Ray again advised Lee to discontinue his TLSO brace.   (Tr. 23, 668.)
- At physician visits between April 2015 and August 2015, Lee was consistently observed to exhibit a normal gait and station, was able to toe walk and heel walk bilaterally without difficulty, exhibited full bilateral lower extremity strength with normal muscle bulk and tone, and had normal sensation.   (Tr. 23, 545-58, 615-19.)
- At his August 13, 2015 FCE, Lee was able to lift 50 pounds occasionally from the floor to his waist, 40 pounds from his waist to shoulder and floor to shoulder, and 35 pounds from waist to overhead; touch the floor with a fair squat; and climb stairs and ramps without the use of hand rails.   (Tr. 23-24, 583-87.)
- On August 19, 2015, based in part on the findings from the FCE, Lee's physical medicine and rehabilitation physician, James L. Williams, M.D., found that no further treatment or evaluation was necessary.   (Tr. 24, 620.)

The evidence cited above and thoroughly discussed by the ALJ supports the ALJ's finding that substantial improvement occurred in Lee's back impairment from the time he underwent surgery in November 2014 to approximately August 2015.

The ALJ next found that the record indicated subsequent worsening of his spinal impairment. The ALJ stated that Lee complained of worsening pain symptoms to Dr. Ray at his one-year follow-up in January of 2016. (Tr. 24, 641.) Dr. Ray referred Lee to a pain management physician. *Id.* Lee started seeing pain management specialist Helen Blake, M.D. in May 2016, at which time Dr. Blake ordered a CT myelogram. (Tr. 24, 787.) Lee underwent a CT myelogram of the thoracolumbar spine on June 17, 2016, which revealed the following: mild left greater than right foraminal stenosis at L3-4 and mild left greater than right foraminal stenosis at L4-5 as well as a central broad-based disc protrusion at L5-S1 without significant central canal or foraminal stenosis. (Tr. 24, 796-97.) Dr. Blake prescribed multiple medications and administered epidural steroid injections to various levels of the thoracic and lumbar spine. (Tr. 24, 788-810.)

The evidence cited by the ALJ supports her finding that Lee's spinal condition worsened sometime in 2016. The undersigned notes that the issue before the ALJ in this action is whether Lee established that he was unable to perform any work due to his spinal impairment for at least twelve months and that this occurred prior to the expiration of his insured status on December 31, 2014. The ALJ found that Lee did not meet this burden because his back impairment substantially improved throughout the course of 2015, such that he was capable of performing medium work by August 2015. The ALJ was not required to demonstrate by substantial evidence her additional finding that Lee experienced a subsequent worsening of his condition.

Thus, Lee's argument lacks merit.

### 3.      Lee's Subjective Symptoms

Lee next contends that the ALJ did not properly consider Lee's subjective complaints or credibility.[3]

In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints.   *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).   "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."   *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001).   "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination."   *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).   *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).   For the following reasons, the Court finds that the reasons offered by the ALJ in support of her analysis of Lee's subjective complaints are based on substantial evidence.

The ALJ first reviewed the objective medical evidence regarding Lee's impairments and found that it was not entirely consistent with Lee's subjective allegations of disabling pain during the relevant period.   Although the ALJ may not rely solely on objective medical evidence to discount a claimant's subjective symptoms, it is entirely proper for the ALJ to consider the

---

[3]Social Security Ruling 16-3p eliminated the term "credibility" from the analysis of subjective complaints.   However, the "regulations on evaluating symptoms are unchanged." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929.

objective medical evidence in assessing a claimant's symptoms.   *See* SSR 16-3p, 2017 WL

5180304, at *5; *Goff v. Barnhart*, 421 F.3d 785, 792-93 (8th Cir. 2005) (holding that it was

proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in

assessing subjective complaints).

The ALJ noted that post-operative imaging consistently showed preserved alignment, no

evidence of instrumentation failure, and no progression of the degenerative disc disease noted.

The only significant abnormality shown on imaging occurred in June of 2016, well after the

relevant period.   The ALJ next stated that treatment notes between April 2015 and August 2015

consistently revealed Lee exhibited a normal gait and station, the abilities to toe and heel walk,

no muscle spasm or tenderness on examination, full bilateral lower extremity strength, normal

deep tendon reflexes bilaterally, and normal sensation.   (Tr. 29-30, 462-63, 517-73, 576-77,

580-81, 608-29, 632.)   She noted that Lee's physical therapist initially observed him to exhibit

limited active lumbar range of motion and strength, but his lumbar range of motion and strength

improved substantially by the summer of 2015.   (Tr. 30, 498.)   The ALJ therefore found that

the overall medical evidence does not support the extent of symptoms and limitations reported by

Lee.   (Tr. 30.)

The ALJ next pointed out that Lee stopped taking his pain medication by February of

2015.   (Tr. 30, 452-54.)   The ALJ may properly consider the strength of a claimant's

medication in assessing the consistency of the claimant's subjective complaints.   *Haynes v.

Shalala*, 26 F.3d 812, 814-15 (8th Cir. 1994) ("A lack of strong pain medication is inconsistent

with subjective complaints of disabling pain.").

The ALJ noted that treating physician Dr. Williams advised Lee that no further treatment

was necessary in August 2015.   (Tr. 30, 624.)   She stated that, although Lee subsequently

sought pain management treatment in May of 2016, this occurred well after the date last insured and in conjunction with the development of increased lumbar disc pain. (Tr. 30.) The ALJ stated that Lee's conservative and efficacious treatment history during the relevant period is not entirely consistent with his allegations of disabling pain. *Id.* The ALJ properly considered Lee's conservative treatment history in determining the consistency of his complaints with the record. *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2012) (noting that the ALJ properly considered that the claimant was seen "relatively infrequently for his impairments despite his allegations of disabling symptoms"); *Casey v. Astrue*, 503 F.3d 687, 693 (8th Cir. 2007) (noting that the claimant sought treatment "far less frequently than one would expect based on the [symptoms] that [he] alleged").

The ALJ next discussed inconsistencies in Lee's testimony. She noted that Lee testified at the hearing that physical therapy only provided him "a little bit of benefit," but his treatment notes reflect substantial improvement. (Tr. 30, 105, 580.) Similarly, the ALJ stated that Lee testified that he experienced worsening of his pain symptoms during his course of physical therapy, but his treatment notes show his pain decreased between late 2014 and August of 2015. (Tr. 31.) Additionally, Lee reported in his May 2015 Function Report that he could no longer do yard work or household chores, yet during the same time period he told medical providers that he was increasing his activities during the day and could do yard work. (Tr. 31, 553, 578.) The ALJ properly considered these inconsistencies in Lee's statements.

In conclusion, the Court finds that the ALJ's evaluation of Lee's subjective complaints is based on substantial evidence and is consistent with regulations and case law. The ALJ acknowledged that Lee's back impairment would cause pain and limitations and took this into consideration in determining his RFC. The ALJ, nevertheless, found the record was

inconsistent with Lee's allegation of an impairment that was disabling for twelve months during the relevant period.

### 4.      RFC Determination

Lee next argues that the RFC formulated by the ALJ is not supported by substantial evidence.   He contends that the RFC is based upon the FCE, yet the FCE is not fully supportive of the ALJ's RFC findings.

RFC is what a claimant can do despite his limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and the claimant's description of his limitations.   *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001).   Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question.   *See Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001); *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000).   Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional.   *See Lauer*, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record).

As previously discussed, the ALJ accorded great weight to the opinion provided by the therapists in the FCE that Lee was capable of performing work within the medium exertional level.   (Tr. 25.)

The ALJ also considered and assigned "significant weight" to the opinion of treating physician Dr. Williams.   (Tr. 25.)   Dr. Williams treated Lee between April 6, 2015, and August 19, 2015.   (Tr. 521-73, 613-20.)   Dr. Williams initially expressed the opinion that Lee could not return to work; but on August 19, 2015, he found that Lee could return to work immediately and

was limited to lifting 75 pounds maximum and 35 pounds frequently.  (Tr. 25, 624.)  He concluded that Lee had reached maximum medical improvement, and that his permanent partial impairment for his thoracic spine injury was seven percent.  (Tr. 25, 619.)  The ALJ indicated that she was assigning significant weight to Dr. Williams' opinion because he was a treating physician and his opinion was consistent with his findings on examination of normal gait, no muscle spasms or tenderness in the spine, negative straight-leg raise, normal lower extremity strength, and normal sensation and reflexes.  (Tr. 25-26, 544-58.)

The ALJ gave "some weight" to the opinion of Daniel L. Kitchens, M.D.  (Tr. 26.)  Dr. Kitchens reviewed the medical records and examined Lee on November 4, 2015.  (Tr. 630-38.)  On examination, Dr. Kitchens found Lee's gait was steady, he had normal bilateral lower extremity strength, and intact sensation to light touch and pinprick throughout except for "subjective" decrease to pinprick along his incision.  (Tr. 26, 632.)  He expressed the opinion that Lee had reached maximum medical improvement and had a permanent partial disability of five prevent related to his workplace injury.  (Tr, 26, 638.)  The ALJ noted that Dr. Kitchen's disability rating provided for the purpose of workers' compensation valuations was not probative in this case, and that Dr. Kitchens did not provide any specific functional limitations.  (Tr. 26.)

Lee argues that there is no medical opinion in the record finding he is capable of all the functional requirements of medium work.  No such opinion, however, is required.  Although an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC."  *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).  Thus, "there is no requirement that an RFC finding be

supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (emphasis in original).

The ALJ found that Lee had the RFC to perform medium work with the following additional limitations: can lift, carry, push, or pull 50 pounds occasionally and 25 pounds frequently; can sit for six hours in an eight-hour workday and stand or walk for six hours in an eight-hour workday; can never climb ladders, ropes, or scaffolds; and can have no exposure to unprotected heights or hazardous machinery. (Tr. 21.)

In making this determination, the ALJ assessed the consistency of Lee's subjective complaints with the record as previously discussed. The ALJ also summarized the extensive medical evidence in this case. The ALJ's RFC was consistent with the opinions of Mr. Hinson and Mr. Turner, Dr. Williams, and Dr. Kitchens. The ALJ also considered Dr. Ray's treatment notes in the year following Lee's surgery, and physical therapy treatment notes revealing improvement.

The Court finds that substantial evidence on the record as a whole supports the ALJ's RFC determination. The medical evidence reveals that Lee's spinal impairment improved following surgery, such that he was capable of performing a limited range of medium work. Lee has failed to demonstrate the presence of a disabling impairment for at least twelve months during the relevant period.

An ALJ's decision is not to be disturbed "'so long as the...decision falls within the available zone of choice.   An ALJ's decision is not outside the zone of choice simply because [the Court] might have reached a different conclusion had [the Court] been the initial finder of fact.'"   *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)).   Although Lee articulates why a different conclusion might have been reached, the ALJ's decision, and, therefore, the Commissioner's, was within the zone of choice and should not be reversed for the reasons set forth above.   *See Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017) (concluding that "[w]hile it was not surprising that in an administrative record which exceeds 1,500 pages, [claimant] can point to some evidence which detracts from the Commissioner's determination, good reasons and substantial evidence on the record as a whole support the Commissioner's RFC determination).

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

**/s/** Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 10th day of September, 2019.